GEORGE MARSHALL, pro ami, *vs.* HOWARD Q. BOARDMAN.

Washington.    Opinion April 4, 1896.

*Shipping.    Master pro hac vice.    Owner.*

A part owner of a vessel let to the master on shares is exonerated from a personal liability to pay seamen's wages, although the part owner procured the charters for the two trips made by the vessel during which the wages of the seamen were earned.

The simple statement that a master "sails," or "hires" or "takes the vessel on shares" implies that he fully controls the management of the vessel for the time being.

Conditions and qualifications which would deprive owners from exemption from such liabilities are not to be presumed; they must be proved. It is like the hiring and letting of any other kind of property whether real or personal. The letter yields and the hirer takes possession, and dominion and control presumably follow the rightful possession,

No such conditions and qualifications of the part owner's liability exist when it appears that the seaman's wages were earned after the former procured the charter, and the latter was not connected in any way with the terms of the contract; that the procurement of the charter was not without the master's consent and direction; and the part owner was not pretending to exercise any personal right as owner.

It would seem inconsistent for the master to pay all the running expenses and to be entitled to the greater part of the earnings if he were merely an agent for the owners.

ON REPORT.

This was an action of assumpsit on account annexed, brought before a trial justice, to recover two months' wages due the plaintiff for his services as a seaman on board the Sch. A. B. Crabtree. The defendant was a part owner and the plaintiff held the master's due-bill or memorandum, dated July 10, 1893, which he produced in evidence. Judgment was rendered in favor of the plaintiff by the trial justice and the defendant appealed.

In the court below the parties agreed to submit the action to the law court upon the following statement of facts: The plaintiff rendered the services alleged in the writ, and the wages sued for are correct in amount. The defendant is owner of one-sixteenth of the schooner on which the plaintiff's services as seaman were rendered. The schooner was sailed by the captain on "shares," he taking three-fifths of her earnings and paying running expenses, and the owners taking two-fifths. The defendant procured the charter made by the captain during which trips the plaintiff's wages were earned.

*Geo. E. Googins*, for plaintiff.

The master in order to be owner pro hac vice must not only have possession of the vessel, but absolute control and direction of her for the time which said vessel is hired, so that the owners could have no right to interfere with her management. See *Holden* v. *French*, 68 Maine, 241; *Reynolds* v. *Toppan*, 15 Mass. 370; and *Taggard* v. *Loring*, 16 Mass. 336.

The vessel was in the employment of the owner during the time when the wages were earned, and the master was appointed by him. The captain acted within the scope of his authority when he

hired the plaintiff. All these things are quite sufficient to render the owner liable. *Reynolds* v. *Toppan*, 15 Mass. 370.

To relieve the owners of a vessel let "on shares" to the master, it must affirmatively appear that the master has the entire control and direction of the vessel with no right of interference on the part of the owners. It is not enough to merely show that the vessel is let on shares. The defendant is liable, unless he can transfer his liability to the master. This he has not done. It does not appear affirmatively that the master had the entire control and direction of the vessel. We do know that the owner, Boardman, procured the charters both trips, thus interfering with the control of the vessel. The silence of the owners as to the point upon which their liability turns is suggestive. *Wickersham* v. *Southard*, 67 Maine, 597.

In the case of *Lyman* v. *Redman*, 23 Maine, 289, Judge TENNEY says: "The cases are numerous which show that the taking the vessel by the master, victualing and manning her, and paying a portion of the port charges, and having a share of the profits do not themselves constitute him the owner pro hac vice. It is the entire control and direction of the vessel which he has the right to assert, and the surrender by the owners of all power over her for the time being, which will exonerate them from the liability of the contracts of the master relating to the usual employment of the vessel in the carriage of goods. The expense of victualing and manning the vessel and receiving compensation for his services, and disbursements in a share of the profits by the master are by no means inconsistent with the right of the employer or owner to have the general direction of the business in which she is engaged." See *Bonzey* v. *Hodgkins*, 55 Maine, 98; *Hall* v. *Barker*, 64 Maine, 339; *Sargent* v. *Wording*, 46 Maine, 464; *Emery* v. *Hersey*, 4 Maine, 412.

*Geo. A. Curran and H. H. Gray*, for defendant.

The master was owner pro hac vice and the owners are not liable. *Thompson* v. *Snow*, 4 Maine, 264; *Giles* v. *Vigoreux*, 35 Maine, 300, and cases cited.

The due-bill is the personal obligation of the master, and must have been so understood by plaintiff and master, otherwise the bill would have been in ordinary form familiar to seamen, i. e. against vessel and owners and approved by the master.

Taking such an obligation leads to the presumption that plaintiff hired on credit of the master and the lien the law would give him on the vessel, and not on credit of the owners. *Noyes* v. *Staples*, 61 Maine, 422.

He settled with the master taking his personal due-bill for the balance due him. Counsel also cited: *Reynolds* v. *Toppan*, 15 Mass. 370.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

PETERS, C. J. It appears, from the facts agreed upon by the parties, that the plaintiff was employed as a seaman on a schooner one-sixteenth of which was at the time owned by the defendant, the plaintiff claiming to recover his full wages of the defendant as such owner; that the schooner was sailed by the master "on shares" he taking three-fifths of her earnings and paying the running expenses, and the owners taking two-fifths of the earnings; and that the defendant procured the charters for the two trips made by the vessel during which the wages of the plaintiff were earned.

The question arising on these facts is whether the master can be said to have had such possession and control of the vessel as to exonerate the owners from a personal liability to pay seamen's wages. We think an affirmative answer must be given on this proposition.

It is said the master must have the exclusive control in order to clear the owners of such personal liabilities. But the simple statement that a master "sails," or "hires," or "takes" the vessel on shares implies that he fully controls the management of the vessel for the time being. That must be the presumption. Of course, there may be various conditions or qualifications annexed to

the contract of hiring or letting vessels on shares which would deprive owners of any such exemption from liability. But conditions or qualifications affecting the contract are not to be presumed; they must be proved in some way. It is like the hiring and letting of any other kind of property whether real or personal. The letter yields and the hirer takes possession, and dominion and control presumably follow the rightful possession.

It is contended by the plaintiff that there is evidence that the master had not the exclusive control of the vessel, in the fact that the defendant procured the charters for her employment for the two trips during which the plaintiff's wages were earned. This admission appears to have been made as a part of the case without any explanation whatever. But it should be noticed that these services of the defendant took place after the contract between owners and master was consummated, and nothing appears to connect his acts in any way with the terms of the contract itself. We take it that it was merely a gratuitous assistance rendered for the benefit of the master although operating perhaps beneficially for all concerned. It cannot be an uncommon thing for owners who are out of the possession and control of their vessels to assist masters in such a way. There is no suggestion that the procurement of the charters was without the consent and direction of the master himself, and no indication that the defendant was pretending to exercise any personal right as owner. It would seem to be inconsistent for the master to pay all the running expenses and be entitled to the greater part of the earnings if he were merely an agent for the owners.

The practice of letting vessels on shares, so as to constitute the master an owner pro hac vice, was an ancient one held in great favor in this and our mother country during those commercial periods when the business of transportation was carried on in a much smaller way and by the means of a much smaller class of vessels than at the present day. Among the very many adjudged cases growing out of such business we have not noticed any decision militating against the views expressed by us in this discussion. We need refer to but a few of the cases in effect supporting

our conclusion. In the early case of *Reynolds* v. *Toppan*, 15 Mass. 370, it was held that, "to render an owner of a vessel liable for the contracts of the master it must be proved that the vessel was in the employment of the owner, that the master was appointed by him, and that the master acted in making such contracts within the scope of his authority." In other words, the presumption that the master is in possession for himself and not for the owner must be overcome by some evidence. In *Taggard* v. *Loring*, 16 Mass. 336, the court held that, where a master hired a vessel for six months, rendering to the owners a moiety of the earnings, and sailed in her himself as master, he was so far the owner of the vessel that he could not be charged with barratry. The case of *Manter* v. *Holmes*, 10 Met. 402, decides that when the owners of a vessel have let her on shares for a certain time to the master, who is to victual and man her, they cannot maintain an action for freight earned by the vessel during that time; and that such an action can be maintained by the master only. In *Howard* v. *Odell*, 1 Allen, 85, it was decided that one who received from his debtor a bill of sale of a vessel, absolute in terms, but intended only as collateral security for a debt, but who never took possession nor had the control of the vessel, nor held her out to the world as his property, was not liable for supplies or repairs furnished for her, although registered in his name. In the case of *Thompson* v. *Snow*, 4 Maine, 264, it appears that the master took the vessel "on shares," those words alone expressing the contract, and this was understood by the court as being a letting by which the master became owner of the vessel pro hac vice in the customary manner of such letting, and the case was heard and determined upon that theory. The case of *Somes* v. *White*, 65 Maine, 542, decides that the rule of excepting general owners from liability exists in relation to claims sounding in tort as well as in cases of contract, where the vessel is in the possession of the master sailing her on shares. The claim in that case arose from a collision between two vessels.

*Judgment for defendant.*